Thank you very much, Your Honor. Good morning. My name is David Slusker. I represent Appellant German Ramirez-Gonzalez. I'm joined by my co-counsel, David Zugman, who represents Appellant Mary Aragon. With the Court's indulgence, I'd like to begin by discussing our collective Rule 29 issues. And, of course, I would be glad to answer questions about any other issues that the Court would like to query regarding. So, with regard to Rule 29, after four different iterations of the indictment and a jury trial that lasted parts of seven days, it became plain that the government was proceeding on an overriding theory concerning only two of the sub-provisions of Section 1324A1A. That is that the co-defendant, Mombasa Partara, longtime Los Angeles Police Department officer, had been the linchpin in transporting Mr. Ramirez and another person, Fermin Lopez, from El Centro to Golden Acorn Casino, and then ultimately to the I-8 Pine Valley checkpoint where they were apprehended. Mr. Partara was therefore the overriding participant in the scheme. The putative principle, the sine qua non, who, once the jury acquitted him, therefore made it legally impossible for the jury to have simultaneously convicted Mr. Ramirez-Gonzalez on Count 1 and Ms. Aragon. I'm sorry, Judge Miller, go ahead. That means that there's a logical inconsistency within the verdict. But there's a lot of authority that the jury can return inconsistent verdicts. So why doesn't this fall under that rule, that even though there's a logical contradiction, the jury can exercise lenity? And that's maybe what it did here. I would draw the distinction, Your Honor, between a logical inconsistency, which you were positing, and a legal impossibility. As this court held in United States v. Gaskins, as the Supreme Court noted as reciting black-letter principles regarding aiding and abetting liability in Rosemont, there actually has to be a completed offense for aiding and abetting liability to approve. Well, but I mean, that's true in Powell. To complete the offense under 843, there had to be a drug felony. And there, the defendant was acquitted of the drug felonies, but convicted on the 843 count. And the Supreme Court said that that was permissible. How is this any different? This is different, Your Honor, because there was only one charged sub-provision here, the transport sub-provision, 1324A1A2. And so, therefore, once Mr. Petaro was acquitted, presumably on the theory that he did not know the alienage of Mr. Ramirez-Gonzalez and Mr. Lopez, and did not have a specific intent to violate the United States immigration laws, there was no one who could have committed any offense. There simply was no completed offense here whatsoever. That is our theory regarding Rule 29. And, therefore, contrary to a typical garden variety inconsistent verdict case, there simply should not have been a guilty verdict for any of the three defendants. We'll note regarding in the district court, actually, during a preliminary jury charge conference, actually seemed to pick up on this. I'll refer the court to page ER322. In the district court, in discussing the jury, the government's proposed instruction that would have allowed the jury to consider convicting an aider and abetter, even if a principal were to be acquitted, the district court said, quote, I don't know that it will actually fit here because if they do not find Mr. Petaro guilty, there may not be anyone to even abet because he is the driver.  Now, ultimately, the district court did not give that instruction, presumably because he agreed. The district judge agreed that without Mr. Petaro's guilt, there was no completed offense here. I mean, how is it different from Valencia was about conspiracy, not aiding and abetting, right? It would be said that, you know, if the government charges a bunch of conspirators and all but one of them are acquitted, the conviction of the one can stand, even though it seems like it's legally impossible to conspire with yourself. So it seems like your argument or your reasoning would suggest that that decision is wrong, too, right? Wouldn't it? I think, Your Honor, that there's a distinction between conspiracy law under, say, Section 371 and Section 2. For Section 2, the completed offense is an absolute essential prerequisite. And conspiracy law, of course, is a more, I would say, a more complicated area in which there could be the kind of inconsistency that you ascribe. How do you square that with Martinez? I know Martinez is old, but we said specifically in that case the principals who violated Section X were acquitted. The fact that those people were not convicted of violating Section X does not preclude Martinez's conviction of aiding and abetting. Because, I mean, I don't understand why that doesn't control and do in your argument. I think, and I would have to reexamine Martinez, Your Honor, and we'd be glad to submit supplemental briefing regarding that if necessary. But the key is that without Mr. Potara's participation, there was no one who satisfied the four essential elements for a 1324 transport case. Neither Mr. Ramirez-Gonzalez nor Ms. Aragon had perfect congruence regarding all four of those. It was only Mr. Potara, and this was the government's overriding theory of the case, it was only he who was the substantive violator. The government's closing argument is specifically mentioned that it was proceeding against Mr. Ramirez-Gonzalez on an aiding and abetting offense. And the theory, and it was kind of ambivalent, ambiguous regarding how it was proceeding against Mr. Aragon. I'll defer to my colleague, Mr. Zugman, regarding that particular issue, sub-issue. But our theory is that regardless of the cases that Judge Miller discussed, what you just described, Judge Graber, this is a very interesting particular fact pattern in which there really only could have been one substantive violator. And so without his liability, with the jury's acquittal, there was no substantive offense as a matter of law. And therefore, there was no one who could have aided and abetted in this case. If there are no further questions, Judge Graber, do you have a question? No, I was going to see if you wanted to reserve time. I would like to reserve time for rebuttal, yes, thank you very much. You may do that. And we'll hear from Mr. Zugman. Good morning, Your Honors. David Zugman on behalf of Ms. Aragon. May it please the Court, and thank you for receiving this by Zoom. If the Court doesn't have a place it specifically wants me to go to, I think I'll pick up on where my co-counsel left off, and that is the question of does it matter that Mr. Katara was acquitted? And to get to Judge Miller's point, that there can be cases where this principle, there are many cases where the principle has been acquitted, and we still hold the aider in a better libel. So I want to focus in on that particular question and point out the uniqueness of the alien smuggling at issue in this case. The government's charge is the three defendants, Mr. Katara, Mr. Ramirez-Gonzalez, and Ms. Aragon, with a substantive act of alien smuggling. I think why that is important is, had Mr. Katara driven to the checkpoint and pointed in the back of his car and said, Hey, look, I don't know the status of these two guys. You want to check them out? I think we would all agree that no offense against the immigration law would have been committed. In other words, in this strange area of the law, the actus reus does not exist without the mens rea, much like in the conspiracy case, where the entire question is, does the person achieve a particular mental state without looking at whether there is some broader effect in the world? And in the conspiracy example that Judge Miller described, oftentimes, almost always, the government charges a conspiracy saying the person's known and unknown to the grand jury. And you can have a conspiracy with people beyond who's before the court. That's frequently the case, especially in large conspiracies. But in this particular case, we only have the three people involved. And I think to allow me to present Ms. Aragon's version of her Rule 29 sufficiency plan, I don't think there's any dispute that Ms. Aragon was trying to disassociate herself from the venture when she left the McDonald's with the wife of Mr. Pitara and started heading home. Ms. Aragon, I have always admitted, was aware of her husband's status. But the thing is, I cannot believe that the law is such that Ms. Aragon was always and forever, whenever she drove Mr. Ramirez-Gonzalez somewhere, committing a violation of the immigration law. I think that she had to specifically intend to violate the immigration law, and that the actus reus depends upon her having that intention to violate the immigration law. Doesn't that discount the text messages and the lengthy phone call at the checkpoint, and after she had gone through the checkpoint and called the casino? Your Honor, I don't think it discounts it in the sense that I don't deny that those things occur. I don't deny that the government put that into evidence. But what the evidence showed was that the two women, Ms. Hernandez and Ms. Aragon, went through an open checkpoint, a checkpoint where people were being checked. So it was not the case that, as I argued unsuccessfully to the jury, I don't see how that could have been construed as helping the alien smuggling offense. Well, it's evidence that the jury can draw whatever conclusions they think, and it sounds like in this case they thought they were aiding. That's correct, Your Honor. I mean, it is the case that the jury can consider any particular piece of evidence, but it does have to, I mean, it's my position that it has to be somewhat, in some manner, helpful. But I understand Your Honor's point with respect to, you know, you can imagine many circumstances where a communication might be construed as helpful. I just think under these unique facts, and I think that's why branching Ms. Aragon in Rule 29 would not suddenly open the floodgates for other defendants to make similar claims. And with that, I'd like to reserve the rest of my time. Thank you. You may do that. And we will hear next from Mr. Howe. Good morning, Your Honor, and may it please the Court. Zach Howe on behalf of the United States. This Court's cases and the Supreme Court's cases are very clear with respect to inconsistent verdicts. I'll quote from this Court's Van Brandy case. This Court has held that, quote, unless there is insufficient evidence to sustain the guilty verdict. That's consistent. Well, that's really the question about opposing counsel relying on the principal and Gaskins and elsewhere that to be an aider and abetter, there has to be a crime to aid and abet. So my question to you is this. Is it possible that the verdicts aren't inconsistent in the following way? Suppose the jury said, well, we think that this crime happened and that Patera was proved to have done it, but only by a preponderance of the evidence. And we know that isn't enough, so we have to acquit. But a crime occurred, in their view. So is that a possible way to reconcile the verdicts? And if it is, are we supposed to go through that kind of a mental exercise? So under that particular hypothetical, I don't think that would be enough to affirm, Your Honor. The reason I say it is because the government has to prove by beyond a reasonable doubt that the crime was actually committed. So in that case, I think you'd be saying the jury found that that standard wasn't met. But I don't think this court goes through that exercise because there are many other reasons that the jury could have acquitted Patera that have nothing to do with the sufficiency of the evidence. Could have been a lenity or mistake or compromise. All of those factors that the court lays out in its opinions. And what the Harris case from the Supreme Court said is, the jury has an unreviewable power to return an acquittal for improper reasons. But the reason that doesn't affect this court's analysis is because the defendant has a due process right to a verdict supported by sufficient evidence. He has no right to a consistent verdict. And that's because inconsistency doesn't show insufficiency of the evidence for all the reasons I've just given. So this really does just come down to a run-of-the-mill sufficiency of the evidence analysis. And when you look at the actual evidence, the appellants haven't made much attempt to contest their own actions or their own knowledge. There are a few exceptions we address in the brief, and I'm happy to go through those. But their main argument is simply that the evidence didn't suffice to show that Patara knew he was transporting aliens. But there was ample evidence for a rational trier of fact to conclude that he did in fact know. That includes the bizarre circumstances of his trip. By his own account, he left his children at home late on a Monday night to take a three-hour drive, two and a half, two hundred and twelve miles down to the border to meet an acquaintance that he hadn't seen for two years. He then discusses the checkpoint with Ramirez at the McDonald's. He then gets this text message from his wife en route to the casino saying, look out for border patrol. And the text message was marked as red. So despite his testimony, he did in fact read it. Then at the casino, they spend 18 minutes there. They do one minute of gambling. Half the time they spend on the phone with Aragon immediately after she's waved through the checkpoint. And so the reasonable inference is that they're discussing the status of the checkpoint. And then, of course, at the checkpoint, he engages in suspicious behavior. And more importantly, he tells outright lies. Lies about Lopez's status. Lies about having presented a California driver's license. He lies about having come down from L.A. with Ramirez and Lopez and Aragon. Based on all of that, a rational trier of fact could find that Petara did in fact know about this offense and that the evidence proved that beyond a reasonable doubt. So the fact that there was enough evidence to show a completed crime shows that Ramirez and Aragon could be convicted of aiding and abetting that crime. The inconsistency is neither here nor there under this court's cases and the Supreme Court cases. Now, I take the thrust of my friends on the other side's argument to be that in those cases we're citing, you can in some way explain the inconsistency. But, of course, that's not what the binding holdings say. They say that despite inconsistency, you can affirm. And in many of the cases, you can't explain the inconsistency in any logical way. So to maybe give an example, if you look at the Dunn case from the Supreme Court, it's an opinion written by Oliver Wendell Holmes. There you had a defendant, and this is during Prohibition era, he's convicted of creating a nuisance by possessing alcohol for sale. Yet, he is acquitted in the very same trial of possessing alcohol and selling alcohol. There is no logical way to explain that, and yet the Supreme Court still affirmed. And the reason was because, again, the jury has an unreviewable power to acquit for improper reasons. We only look at whether there's sufficient evidence. And here there was. Now, if the court really did want to avoid this inconsistency issue entirely, you could simply hold that Aragon herself was the principal in this offense, and that Ramirez aided and abetted. Because, of course, Aragon transported Ramirez and Lopez from the hotel near the border to the McDonald's to meet Batara for further transportation. And there's no dispute here that she did that knowing that they were illegally within the country and wanted to help them stay there. And, of course, Ramirez aided and abetted that offense because he's the one who set up that meeting at McDonald's in the first place. He called Batara, he sent him the address to the McDonald's, and he later sent him a pin drop to the McDonald's. And the only response appellants really have to that is that we didn't press this theory in the trial court. Now, there are two responses to that. One is that's just factually wrong. If you look at page 527, 842, and 843 of the supplemental excerpts of record, the government argued this not only in response to the Rule 29 motion, but it then outlines this theory before the jury in closing argument. It says, first, Batara was the principal. It says, second, Ramirez also transported, and she aided and abetted Batara's transportation. Did you mean Aragon? You said Ramirez. Oh, my apologies. Yes, Aragon herself physically transported aliens for the reasons I've just given. The government makes that argument to the jury. And then the government goes on and contrasts Ramirez with Aragon and Batara. It says, unlike the other two defendants, Ramirez didn't physically transport, but he aided and abetted. So it's very clear that the government put this theory before the jury. And, of course, the second point is that really that's all irrelevant, because the only thing that matters is that the jury was properly instructed, and here it's undisputed that it was. You can see those instructions at page 157 and 158 of the record, and that the evidence sufficed. As long as those two conditions are met, the jury was perfectly entitled to find that Aragon was the principal and that Ramirez aided and abetted her. So on either one of those grounds, this court can affirm the convictions here. Now, of course, we also have a third theory. That's our causing theory. I'm happy to rest on our briefs for that. I am happy to answer questions on it if the court has them. I'm also happy to address questions on the other three issues in this case, but, again, I'm happy to rest on the briefs if the court doesn't have questions about that. So I would ask that the court affirm, and if there are no other questions, then I'm happy to yield the remainder of my time to the court. I don't see any further questions from my colleagues, so thank you. And we're ready for rebuttal. We'll start, I guess, with Mr. Schlesinger again. Thank you, Your Honor. To return to the hypothetical reading of the verdict that you had posited, it's simply not permissible for this court to re-weigh the evidence as the jury. I think Mr. Howe agrees with you entirely. Yeah, and I did hear that he acknowledges that. In my brief remaining time, I would like to mention that in response to what Mr. Howe had said regarding the possibility of the jury having perhaps reached a verdict for improper reasons, all three defense counsel, including Mr. Zugman, who represented Ms. Eric on trial, had argued in closing arguments that Mr. Batara had been duped by Mr. Ramirez-Gonzalez and Ms. Aragon into transporting the two individuals. And so therefore, without the requisite cyanar, the offense simply could not have been committed. In our view, that's the most logical way to view how the jury decided it without delving into improper areas. If there are no further questions, I'd be pleased to turn the podium to Mr. Zugman. Thank you. Mr. Zugman, you have a few seconds remaining for rebuttal as well. Your Honor, I was just going to echo what Mr. Schlesinger said. So unless the court has specific questions, I'm happy to submit. I don't see any. Thank you all. The case just argued is submitted, and we very much appreciate helpful arguments from all three of you. And with that, we are adjourned for this morning's session.
judges: Graber, Hillman, Miller